UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JEFFREY WILLIAMS ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v.  ) | 1:22-cv-00197-GZS |
| ) | |
| ) | |
| STATE OF MAINE, ) | |
| ) | |
| Respondent ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Petitioner, pursuant to 28 U.S.C. § 2254, seeks relief from a state court conviction and sentence. (Petition, ECF No. 1.) Petitioner claims his trial attorney provided ineffective assistance and that the State improperly failed to record a proffer with a cooperating co-conspirator. The State asks the Court to dismiss the petition. (Response, ECF No. 7.)

After a review of the section 2254 petition, the State's request for dismissal, and the record, I recommend the Court grant the State's request and dismiss the petition.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

At approximately 5:45 a.m. on June 20, 2008, Darlene George called 911 to report a home invasion and robbery. George informed police that when she and her thirteen-year-

---

[1] Unless otherwise noted, the facts recounted below are drawn primarily from the state courts' summaries. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"); *Hensley v. Roden*, 755 F.3d 724, 727 (1st Cir. 2014) (recounting the facts as "derived from the [state court] decision").

old son had returned to her home in Old Orchard Beach around 11:00 p.m. the night before, three men had broken into the home, tied them up, and demanded drugs and money. She reported several items had been stolen.

George's husband had returned home from work around 1:00 a.m. Police found him dead in the basement of the home with a plastic bag over his head and a bottle of rum lodged in his throat. The Medical Examiner's Office determined the cause of death was asphyxiation. Law enforcement officers found three knives at the scene. Two of the knives were located near the victim's body, and one knife was in a bedroom.

Police found the victim's vehicle at a nearby restaurant. A dispatcher at a taxi company reported that two men had called a cab from that location to take them to Portland. The taxi driver who transported the two men told police that he delivered the two men to the Concord Trailways bus station. Video recordings and ticket purchases showed Petitioner and another man, Rennie Cassimy, arrived on June 19, 2008, from New York City and returned on June 20, 2008. Police found Petitioner's DNA on a coffee cup in the trash at the restaurant. Phone records and cell tower location data also showed that, at 3:39 a.m. on June 20, a call was made in Old Orchard Beach from Petitioner's mobile phone. Subsequent investigation and records revealed that Petitioner was George's brother, and Cassimy had a romantic relationship with George.

On June 24, 2008, the state filed a criminal complaint charging Petitioner and Cassimy with murder. (*State v. Williams*, Me. Super. Ct., ALFSC-CR-2008-01525, Docket Record at 1.) In July and September 2008, George testified before a grand jury that she had no knowledge of Petitioner or Cassimy being in Maine on the relevant June dates and

that she was not romantically involved with Cassimy. In July and September 2008, a grand jury indicted Petitioner and Cassimy with one count of murder and one count of conspiracy to commit murder. (Docket Record at 2, Superseding Indictment at 1–2.) In March 2009, George was also indicted along with Petitioner and Cassimy for murder and conspiracy to commit murder. (Docket Record at 3, Superseding Indictment at 1–2.) In January 2010, after an unrecorded proffer meeting, Cassimy agreed to cooperate with the State and entered into a plea agreement on the conspiracy charge.

      A jury trial was held in June 2010 on the charges against George and Petitioner. (Docket Record at 5–7.) Cassimy testified that George discovered that her husband was having an extramarital affair and was planning to divorce her. George recruited Cassimy and Petitioner to kill her husband and make it look like a home invasion. According to Cassimy, he and Petitioner waited for George and her son to return home, tied them up, and then waited for the victim to return home. When the victim arrived, Petitioner punched him, dragged him to the basement, tied him up with rope, and tied a plastic bag over his head. After some time, Cassimy went to the basement, cut a hole in the bag and poured rum down the victim's throat to confirm that he was dead.

      George did not testify at trial, but Petitioner did. Petitioner claimed that he had traveled to Maine to be with his sister. According to Petitioner, George picked up Petitioner and Cassimy at the bus station, but instead of driving them to her house, she dropped them off at a nearby motel and left to do errands. Petitioner asserted that after he returned from the restaurant and had dinner, he stayed at the motel all night, while Cassimy left the motel and did not return until the following morning. Petitioner said he returned to

New York the next morning because he was upset that his sister had not spent time with him as expected. Petitioner did not deny making the early morning cell phone call; he claimed that he called his girlfriend from the motel.

The jury found Petitioner and George guilty on both counts. (*Id.* at 7.) The Superior Court sentenced Petitioner to life in prison on the murder charge and thirty years to be served concurrently on the conspiracy charge. (*Id.* at 8.) The Maine Law Court affirmed. *State v. Williams*, 52 A.3d 911, 916 (Me. 2012).

Petitioner filed a state postconviction motion in March 2013. (*Williams v. State*, Me. Super. Ct., ALFSC-CR-2013-00726, Docket Record at 1.) After an evidentiary hearing via videoconference in March 2021, the Superior Court denied the state petition in February 2022. (*Id.* at 8–9; State Postconviction Decision at 16–17.) Petitioner sought discretionary review of the denial from the Maine Law Court, but in May 2022, the Law Court denied a certificate of probable cause to appeal the denial of the state postconviction petition. (*Williams v. State*, Me. L. Ct., YOR-22-56, Docket Record at 2–3; Order Denying Certificate of Probable Cause at 1.) Petitioner then filed the federal § 2254 petition.

## DISCUSSION

**A.      Legal Standards**

Pursuant to 28 U.S.C. § 2254(a), a person in custody pursuant to the judgment of a state court may apply to a federal district court for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

4

Absent circumstances not relevant to Petitioner's case, a petitioner is required to exhaust available state court remedies before he seeks federal habeas review. 28 U.S.C. § 2254(b), (c).[2] "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam)) (quotation marks omitted). In *Baldwin,* the Court noted that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan,* 513 U.S. at 365–66).

---

[2] Title 28 U.S.C. § 2254(b) and (c) address exhaustion and state:

> **(b) (1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> **(A)** the applicant has exhausted the remedies available in the courts of the State; or
>>
>> **(B) (i)** there is an absence of available State corrective process; or
>>
>> **(ii)** circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> **(3)** A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> **(c)** An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To exhaust a claim fully in state court in Maine, a petitioner must request discretionary review by the Law Court.  *See* 15 M.R.S. § 2131.  The Supreme Court has held that a procedural default bars federal review absent a demonstration of cause for the default and prejudice to the petitioner:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[3]

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized a "narrow exception" to its holding in *Coleman*, based on equity, not constitutional law: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  566 U.S. at 9, 16.  However, when the procedural default relates to post-conviction counsel's actions at the discretionary-review stage rather than at the initial-review stage of the collateral proceedings, habeas relief is not available:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.  It does not extend to attorney errors in

---

[3] Procedural default is a judicial doctrine "related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition." *Lovins v. Parker,* 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)).

>   any proceeding beyond the first occasion the State allows a prisoner to raise
>   a claim of ineffective assistance at trial . . . .

*Martinez*, 566 U.S. at 16 (citations omitted).

As to federal habeas claims that were adjudicated on the merits in state court, the federal court may not grant relief unless (1) the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the Supreme Court, pursuant to 28 U.S.C. § 2254(d)(1); or (2) the decision was based on an unreasonable determination of the facts, pursuant to section 2254(d)(2).[4]

As to review of a state court decision under section 2254(d)(1), "[i]t is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson,* 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the [*Strickland v. Washington*, 466 U.S. 668 (1984)] standard itself." *Harrington*, 562 U.S. at 101. Claims of ineffective assistance of counsel are thus

---

[4] Title 28 U.S.C. § 2254(d) provides:

>   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−
>
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

subject to a "'doubly deferential'" standard of review, in deference to both the state court and defense counsel.  *Woods v. Etherton,* 578 U.S. 113, 117 (2016) (per curiam) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).  State court determinations of fact "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[5]

In *Strickland*, the Supreme Court set forth the relevant Sixth Amendment standard by which claims of ineffective assistance based on counsel's errors are evaluated on the merits; *Strickland* requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 688, 694.  A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.*

---

[5] The decisions under review in this case are the Law Court's orders affirming the decisions of the trial court, because the Law Court's decision is the final state court adjudication on the merits of each claim. *See Greene v. Fisher*, 565 U.S. 34, 40 (2011) (noting that the last state-court adjudication on the merits of the petitioner's constitutional claim occurred on direct appeal to the state's supreme court); *Clements v. Clark*, 592 F.3d 45, 52 (1st Cir. 2010) ("A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'") (quoting *Teti v. Bender*, 507 F.3d 50, 56-57 (1st Cir. 2007)).

However, because the Law Court's postconviction order did not explain the Court's reasoning for denying a certificate of probable cause, the federal court may consider the trial court's decision for those claims:

> We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (noting the state may rebut the presumption).

at 697.  A court presumes "that counsel has 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Companonio v. O'Brien*, 672 F.3d 101, 110 (1st Cir. 2012) (quoting *Strickland*, 466 U.S. at 690).

A court considers "the totality of the evidence," and "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695-96.  "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

**B.     Failure to Test Knives for DNA**

Petitioner contends that his trial attorney provided ineffective assistance by failing to obtain DNA testing on the three knives found at the crime scene, which testing he asserts would have supported his three-person theory of the case.  (Petition at 5.)  Petitioner maintains that contrary to the testimony of the cooperating co-conspirator, there were three individuals present at the crime scene, not two.

During the state postconviction proceedings, Petitioner obtained DNA testing of the knives.  Two DNA experts testified at the state postconviction hearing.  According to the experts, the DNA collected from each of the three knives had more than two contributors.  One of the experts asserted that it was more likely that one of the contributors was a close relative of Petitioner, such as a sibling, and that Petitioner was not one of the contributors, but that he could not exclude Petitioner as a contributor.

The Superior Court concluded that it was reasonable for Petitioner's counsel to forego additional DNA testing because: (1) DNA testing on the knives was not necessary

to pursue the three-person theory defense, which counsel argued was supported by other evidence, such as the number of the knives and the initial testimony of George's son; (2) it preserved the arguments that the State had not found any of Petitioner's DNA and had not conducted a thorough investigation, and (3) the DNA evidence eventually discovered was of little assistance because the assailants wore gloves and because the DNA evidence could not rule Petitioner out as a contributor. (State Postconviction Decision at 12–14.)

The state court reasoning is sound. Counsel made a reasonable tactical choice because requesting further DNA testing risked undermining his other arguments (e.g., the investigation was inadequate, no DNA evidence establishing that Petitioner was at the scene). *See Yeboah-Sefah v. Ficco*, 556 F.3d 53, 70 (1st Cir. 2009) ("Judicial scrutiny of counsel's performance must be highly deferential, and a reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented") (internal quotation marks and modifications omitted). Petitioner has also failed to establish prejudice from counsel's decision because the benefit of the DNA results would have been marginal. Because the knives were evidently from the home, at least one of the three or more contributors could have been a resident or a prior guest of the house rather than an assailant, which means the DNA evidence provided negligible support for the theory that Cassimy was not truthful when he testified there were two assailants.

In sum, the state court decision was not contrary to or an unreasonable application of *Strickland* and its progeny.

## C. Unrecorded Interview

Petitioner argues that the State committed prosecutorial misconduct by failing to record a proffer meeting and interview with Cassimy in which he agreed to accept a plea deal and provide testimony against Petitioner and George. (Petition at 7.) A police detective suggested there were some differences between Cassimy's testimony at trial and his statements during the interview, but the detective could not recall the differences.

To the extent Petitioner intended to assert a standalone prosecutorial misconduct or due process claim, the argument does not provide a basis for habeas relief because Petitioner failed to exhaust the issue by raising it during his direct appeal or during the state postconviction process. Even assuming Petitioner intended to assert an ineffective assistance claim based on the failure to raise at trial or on appeal the alleged misconduct, as Petitioner did before the Superior Court during the state postconviction process, the claim lacks merit.[6]

The Superior Court properly determined that, absent bad faith, the failure to create evidence or a record of information that could potentially serve an impeachment purpose is not equivalent to the destruction or suppression of impeachment evidence. (State Postconviction Decision at 14–15.) Petitioner made no showing of bad faith by the State to withhold favorable evidence and did not refute the State's contention that it was not the

---

[6] Although Petitioner presented the ineffective assistance version to the Superior Court during the postconviction process, Petitioner did not raise that ground for relief in his arguments before the Law Court during the postconviction process. He, therefore, arguably failed to exhaust the ineffective assistance argument. Because the State did not raise that separate exhaustion issue, however, I consider and address the merits of the claim.

practice in Maine in 2010 to record such interviews. While the First Circuit has counseled against the failure to document or record pretrial interviews, there does not appear to be any broad legal requirement to do so. *See United States v. Houlihan*, 92 F.3d 1271, 1289 (1st Cir. 1996) (upholding legality of directive not to take notes during pretrial interviews but stating that "the legitimate interests of law enforcement will be better served by using recording equipment and/or taking accurate notes than by playing hide-and-seek" by attempting to avoid disclosure obligations).

Because there was no prosecutorial misconduct or violation of Petitioner's due process rights, the state court correctly determined that Petitioner failed to establish any deficient performance regarding that issue or prejudice from counsel's decisions.

**D.     Expert on Cell Phone Location Tracking**

Petitioner asserts his attorney provided ineffective assistance by failing to call an expert on mobile phone technology to help demonstrate, based on the early morning call on June 20, that he was not at the victim's home when the murder occurred. (Petition at 8.) The Superior Court found that the expert testimony at the hearing did not support Petitioner's argument. (State Postconviction Decision at 11–12.) The expert witness was unable to provide more specific location information for the 3:39 a.m. call than was presented at trial because the cellular phone from 2008 did not have GPS capabilities and although cell tower data narrowed the location to a five-mile radius, the area contained both the motel and the crime scene. Because more than an hour elapsed between the murder and the phone call, and because the crime scene and the motel were less than a mile and a half from one another, even if an expert could have produced more specific location

12

information that showed Petitioner was at the motel at the time of the phone call, it would have done little, if anything, to undermine the State's case.

The state court's determination was not contrary to or an unreasonable application of *Strickland* and its progeny.

### E. Preparation to Testify

Petitioner argues that his attorney failed to prepare him adequately to testify at trial. (Petition at 10.) The Superior Court reviewed the Petitioner's trial testimony, summarized testimony from his attorney about the meetings and advice provided to Petitioner regarding his testimony, and concluded that there was no merit to the ineffective assistance claim. The Superior Court described Petitioner's testimony as "concise, coherent, and respectful." (State Postconviction Decision at 15.)[7] Petitioner provides no basis to conclude that additional preparation or a different method of preparation would have materially altered the jury's assessment of his testimony and credibility. A review of the record reveals nothing to refute the state court's conclusion.

Petitioner also asserts that he wished to testify about his criminal history in greater detail than his attorney recommended. (Petition at 10.) The Superior Court noted that the only evidence the State was able to introduce about Petitioner's prior acts was a single question confirming that he had a robbery conviction. The Superior Court determined that a reasonable attorney could have concluded that it would not have been a wise tactical

---

[7] Petitioner did not raise this ground four in his argument before the Law Court during the postconviction process, and, therefore, relief is also arguably not available because he failed to properly exhaust the issue. Because the State did not assert an exhaustion defense, however, I consider and address the merits of the claim.

13

decision to open the door to the jury considering additional information about criminal convictions, a lengthy prison sentence, and lifetime parole. (State Postconviction Decision at 16.) Petitioner has not provided any argument to cast doubt on the state court conclusion. Petitioner's argument, therefore, is not persuasive.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2254 Cases. I recommend the Court dismiss Petitioner's petition for habeas relief under 28 U.S.C. § 2254, and that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 8th day of March, 2023.